In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 20-2244

SEAFARERS PENSION PLAN,
derivatively on behalf of The Boeing Company,

*Plaintiff-Appellant*,

*v.*

ROBERT A. BRADWAY, *et al.*,

*Defendants-Appellees*,

*and*

THE BOEING COMPANY,

*Nominal Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-CV-08095 — **Harry D. Leinenweber**, *Judge*.

———————————

ARGUED NOVEMBER 30, 2020 — DECIDED JANUARY 7, 2022

———————————

Before EASTERBROOK, WOOD, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. On October 29, 2018, a Boeing 737 MAX airliner crashed in the sea near Indonesia, killing

everyone on board. A few months later, on March 10, 2019, a second 737 MAX crashed in Ethiopia, again killing everyone on board. Within days of the second crash, all 737 MAX airliners around the world were grounded. The United States Federal Aviation Administration kept the planes grounded until November 18, 2020, when it was satisfied that serious problems with the planes' flight control systems had been corrected.

In December 2019, plaintiff Seafarers Pension Plan, a shareholder of the Boeing Company, filed this derivative suit on behalf of Boeing under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a)(1). The suit alleges that Boeing officers and board members made materially false and misleading public statements about the development and operation of the 737 MAX in Boeing's 2017, 2018, and 2019 proxy materials. The district court dismissed the suit without addressing the merits, applying a Boeing bylaw that gives the company the right to insist that any derivative actions be filed in the Delaware Court of Chancery. We reverse. Because the federal Exchange Act gives federal courts exclusive jurisdiction over actions under it, applying the bylaw to this case would mean that plaintiff's derivative Section 14(a) action may not be heard in any forum. That result would be contrary to Delaware corporation law, which respects the non-waiver provision in Section 29(a) of the federal Exchange Act, 15 U.S.C. § 78cc(a).

I.   *Factual and Procedural Background*

The Boeing Company is an international aerospace company headquartered in Illinois and incorporated under Delaware law. Plaintiff Seafarers Pension Plan is a Boeing shareholder. In addition to the loss of 346 lives, the 737 MAX

accidents and the subsequent grounding of all 737 MAX
planes and ensuing investigations and litigation will end up
costing Boeing billions of dollars. This case is a part of that
larger picture, but it presents issues that do not call upon us
to address the merits of plaintiff's claims or their role in the
larger aftermath of the 737 MAX crashes.

The Seafarers Plan filed this derivative suit under Section
14(a) of the Securities Exchange Act of 1934 alleging that Boe-
ing's current and former officers and directors disseminated
materially false and misleading proxy statements from 2017
through 2019. See 15 U.S.C. § 78n(a)(1); 17 C.F.R. § 240.14a-9.
The Exchange Act gives federal courts exclusive jurisdiction
over suits filed under the Act. 15 U.S.C. § 78aa. The Seafarers
Plan therefore filed its complaint in the Northern District of
Illinois, where Boeing is headquartered.

The defendants moved to dismiss based on the doctrine of
forum non conveniens, invoking a Boeing bylaw that pro-
vides in relevant part:

> With respect to any action arising out of any act
> or omission occurring after the adoption of this
> By-Law, unless the Corporation consents in
> writing to the selection of an alternative forum,
> the Court of Chancery of the State of Delaware
> shall be the sole and exclusive forum for … any
> derivative action or proceeding brought on be-
> half of the Corporation … .

The defendants conceded that enforcement of the forum by-
law would foreclose the Seafarers Plan's federal derivative
suit entirely. They argued, however, that Delaware law of-
fered a sufficient substitute that would allow the Seafarers

Plan to vindicate its substantive rights under the Exchange Act of 1934. The district court agreed with defendants and dismissed the suit. *Seafarers Pension Plan v. Bradway*, 2020 WL 3246326, at *4 (N.D. Ill. June 8, 2020).[1]

Applying the forum bylaw to this case is contrary to Delaware corporation law and federal securities law. In Part III, we explain that the forum bylaw is unenforceable as applied to this case because its application would violate Section 115 of the Delaware General Corporation Law. Delaware corporation law gives corporations considerable leeway in writing bylaws, including bylaws with choice-of-forum provisions, but it respects federal securities law and does not empower corporations to use such techniques to opt out of the Exchange Act. In Part IV, we address the cases the district court relied upon to grant dismissal. Before we discuss the merits, however, we address in Part II the appropriate standard of review.

II.  *Standard of Review*

The Seafarers Plan argues that we should decide de novo the legal question whether the forum bylaw is enforceable. Defendants argue that dismissal on forum non conveniens grounds should be reviewed more deferentially, only for an abuse of discretion. We have often said that forum non conveniens calls for a trial court to exercise its sound discretion and that we review such dismissals or denials of

---

[1] Along with its federal claims, the Seafarers Plan initially alleged claims under Delaware law for breaches of fiduciary duty and unjust enrichment. Once the defendants invoked the forum bylaw, the parties agreed to dismiss the state-law claims without prejudice to allow refiling in state court in Delaware.

dismissals for abuse of discretion. E.g., *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 893–94 (7th Cir. 2018), quoting *Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016); see also *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 261 (1981) (finding no abuse of discretion in granting dismissal in tort case in U.S. court arising from aircraft crash in Scotland). If we were dealing with an ordinary choice-of-forum clause in a contract, that standard would apply.

The specific problem here is different, calling for what amounts to de novo review. Boeing's forum bylaw presents only questions of law, which we ordinarily review de novo. The district court explained that it dismissed this case because it concluded, as a matter of law, that the Boeing forum bylaw was enforceable in this case. *Seafarers Pension Plan*, 2020 WL 3246326, at *4. In a wide range of contexts, we have explained that if a district court exercises its discretion based on an erroneous view of the law, it will necessarily abuse its discretion. See, e.g., *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021), quoting *Abbott Labs v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir. 1992) (in deciding preliminary injunction motion, "district court 'abuses its discretion when it commits … an error of law'"); *Schleicher v. Wendt*, 618 F.3d 679, 688 (7th Cir. 2010) (holding "district court did not commit a legal error, or abuse its discretion" in deciding that plaintiffs offered sufficient evidence to invoke fraud-on-the-market theory to prove reliance prong of Rule 10b-5 claim). In this context, it is well-settled that the enforceability of a contract's forum-selection clause is a question of law that we review de novo. E.g., *Bonny v. Society of Lloyd's*, 3 F.3d 156, 159 (7th Cir. 1993); see also *Continental Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 607 (7th Cir. 2003); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 207 (7th Cir. 1993); *Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372,

375 (7th Cir. 1990). Because the district court based its decision on its view of legal issues, de novo review of the governing questions of law is appropriate here.

### III. *Applying Delaware Corporation Law*

The most straightforward resolution of this appeal is under Delaware corporation law, which we read as barring application of the Boeing forum bylaw to this case invoking non-waivable rights under the federal Exchange Act. We first address in Part III-A the nature of plaintiff's derivative Exchange Act claim and then in Part III-B the relevant Delaware statutes and case law on such forum-selection bylaws.

### A. *Plaintiff's Derivative Claims Under the Exchange Act of 1934*

Plaintiff's derivative suit under Section 14(a) is straightforward. Section 14(a) and its implementing regulation, SEC Rule 14a-9, prohibit material misstatements or omissions in a proxy statement. 15 U.S.C. § 78n(a)(1); 17 C.F.R. § 240.14a-9(a). To state a claim under Section 14(a), a plaintiff must allege that (i) the proxy statement contained a material misstatement or omission, which (ii) caused plaintiff's injury, and (iii) that the proxy solicitation itself, rather than the particular defect in the solicitation, was an essential link in the accomplishment of the transaction. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384–85 (1970). As noted, the Exchange Act provides that only federal courts may exercise jurisdiction over claims that arise under the Act. 15 U.S.C. § 78aa. Section 14(a) may be enforced in private actions by shareholders asserting their own rights and in derivative actions asserting rights of a corporation harmed by a violation. *J.I. Case Co. v. Borak*, 377 U.S. 426, 431–32 (1964).

In a derivative suit under Section 14(a), the theory "is that a corporation's board has been so faithless to investors' interests that investors must be allowed to pursue a claim in the corporation's name." *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 316–17 (7th Cir. 2012). A derivative suit is considered "an asset of the corporation" and permits "an individual shareholder to bring 'suit to enforce a *corporate* cause of action against officers, directors, and third parties.'" *Kamen v. Kemper Financial Servs., Inc.*, 500 U.S. 90, 95 (1991), quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970); *Lefkovitz v. Wagner*, 395 F.3d 773, 776 (7th Cir. 2005), quoting *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589 (7th Cir. 2003).

Here, plaintiff alleges that the false and misleading proxy statements caused harm to Boeing by enabling the improper re-election of directors who had for years tolerated poor oversight of passenger safety, regulatory compliance, and risk management during the development of the 737 MAX airliner. Plaintiff further alleges that the proxy statements provided misleading recommendations to shareholders and caused shareholders to vote down a shareholder proposal calling for bifurcation of the CEO and chairman positions.

Regardless of the ultimate merits of the claims, plaintiff's chosen forum in the federal district where Boeing is headquartered seems appropriate for the case. To avoid that chosen forum and defeat the claims entirely, defendants invoked Boeing's forum bylaw. If it can be applied to this case, the bylaw will force plaintiff to raise its claims in a Delaware state court, which is not authorized to exercise jurisdiction over Exchange Act claims. 15 U.S.C. § 78aa; *Cottrell v. Duke*, 737 F.3d 1238, 1247–48 (8th Cir. 2013). If that's correct, checkmate for defendants. That result would be difficult to reconcile with

Section 29(a) of the Exchange Act, which deems void contractual waivers of compliance with the requirements of the Act. 15 U.S.C. § 78cc(a).

### B.  *Delaware Corporation Law on Forum-Selection Bylaws*

We read Delaware corporation law as rejecting Boeing's use of its forum bylaw to foreclose entirely plaintiff's derivative action under Section 14(a). Section 115 of the Delaware General Corporation Law addresses specifically bylaws that impose choices of forums for litigation involving corporate affairs. Section 115 provides in relevant part that "bylaws may require, consistent with applicable jurisdictional requirements, that any or all internal corporate claims shall be brought solely and exclusively in any or all of the courts in this State." 8 Del. C. § 115. Section 115 defines "internal corporate claims" to include derivative claims like this one: "claims, including claims in the right of the corporation, (i) that are based upon a violation of a duty by a current or former director or officer or stockholder in such capacity … ." 8 Del. C. § 115.

For present purposes, the two key phrases in Section 115 are "consistent with applicable jurisdictional requirements" and "courts *in* this State." As applied here, Boeing's forum bylaw violates Section 115 because it is inconsistent with the jurisdictional requirements of the Exchange Act of 1934, 15 U.S.C. § 78cc(a). Further, federal courts in Delaware are courts "in" that State, as distinct from courts "of" that State. The statutory language shows that Section 115 does not authorize application of Boeing's forum bylaw to close all courthouse doors to this derivative action.

First, regarding the "jurisdictional requirements" phrase, guidance from the Delaware General Assembly supports this reading of Section 115. The synopsis accompanying the 2015 Amendments to the Delaware General Corporation Law anticipated the question posed in this case. It cautioned that the new Section 115 was "not intended to authorize a provision that purports to foreclose suit in a federal court based on federal jurisdiction, nor is Section 115 intended to limit or expand the jurisdiction of the Court of Chancery or the Superior Court." S.B. 75, 148th Gen. Assemb., Reg. Sess. (Del. 2015) (synopsis). By eliminating federal jurisdiction over the Seafarers Plan's exclusively federal derivative claims, Boeing's forum bylaw forecloses suit in a federal court based on federal jurisdiction. That's exactly what Section 115 was "not intended to authorize." [2]

Second, while we might hesitate to place decisive weight solely on a choice of preposition in the statute, we must also note that the choice is consistent with the Delaware Supreme Court's and our understanding of the Delaware statute. The United States District Court and Bankruptcy Court for the District of Delaware are certainly, in the statute's words, "courts *in* this State" of Delaware. In *Salzberg v. Sciabacucchi*, 227 A.3d 102, 119 (Del. 2020), the Delaware Supreme Court addressed Section 115 and said it presumed that the reference

---

[2] Delaware law holds that a bill synopsis is a proper source from which to glean legislative intent where the statutory language seems ambiguous. *Board of Adjustment of Sussex Cty. v. Verleysen*, 36 A.3d 326, 332 (Del. 2012); *Carper v. New Castle Cty. Bd. of Ed.*, 432 A.2d 1202, 1205 (Del. 1981). Section 115 as enacted was not materially different from the language described in the synopsis.

to "courts in this State" included federal courts located in the state.

If the statute had said "courts *of* this State," the statutory language might have given defendants a better toehold. Most circuits treat forum-selection clause references to courts "of" a state as not including federal courts in the state, but references to courts "in" a state as including both state and federal courts located in the state. See, e.g., *New Jersey v. Merrill Lynch & Co.*, 640 F.3d 545, 549 (3d Cir. 2011) (collecting cases, including *FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010), and *Dixon v. TSE Int'l Inc.*, 330 F.3d 396, 398 (5th Cir. 2003)); cf. *Regis Associates v. Rank Hotels (Management) Ltd.*, 894 F.2d 193, 195–96 (6th Cir. 1990) (construing contractual clause consenting to "jurisdiction of the Michigan Courts" as not clearly waiving statutory right to remove case from state courts to a federal court in Michigan). Similarly, for example, the federal Tax Injunction Act bars federal district courts from enjoining state tax collections when "a plain, speedy and efficient remedy may be had in the courts *of* such State." 28 U.S.C. § 1341 (emphasis added). That statutory language means that such cases must ordinarily be heard in state courts, as distinct from language designating courts "in" a state as suitable forums. See *City of Fishers v. DirecTV*, 5 F.4th 750, 753 (7th Cir. 2021) (discussing Tax Injunction Act).

From these signals in the statutory text and Delaware case law, we conclude that Section 115 does not authorize use of a forum-selection bylaw to avoid what should be exclusive federal jurisdiction over a case, particularly under the Exchange Act.

Defendants counter that Section 115 does not matter because the Boeing bylaw is authorized under Section 109(b), which provides broadly that a corporation's "bylaws may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its right or powers or the rights or powers of its stockholders, directors, officers or employees." 8 Del. C. § 109(b). We are not persuaded that Section 109(b) saves this bylaw in this case.

We start with the general principle, which Delaware law adopts, that more specific statutory provisions, like Section 115 for bylaws with forum-selection clauses, ordinarily take precedence over more general provisions like Section 109. E.g., *Turnbull v. Fink*, 668 A.2d 1370, 1377 (Del. 1995) ("Where possible, a court will attempt to harmonize two potentially conflicting statutes dealing with the same subject. If they cannot be reconciled, however, the specific statute must prevail over the general.") (citations omitted). Section 109 includes the limit "not inconsistent with law," which does not invite corporations to avoid non-waiver provisions like Section 29(a) of the Exchange Act.

Defendants counter that principle, however, by arguing that in *Salzberg v. Sciabacucchi*, 227 A.3d 102 (Del. 2020), the Delaware Supreme Court held that the more general Section 109 actually provides broader authorizations than Section 115. Defendants read too much into *Salzberg*, which does not allow enforcement of Boeing's forum bylaw in this case. In *Salzberg*, several Delaware corporations wrote charters with provisions requiring that any actions arising under the Securities Act of 1933 be filed in federal courts. *Id.* at 109. Unlike the Exchange Act of 1934, the Securities Act of 1933 allows

plaintiffs to file suit in state *or* federal court and, significantly, bars removal from state to federal court. 15 U.S.C. § 77v(a); *Cyan, Inc. v. Beaver County Emps. Ret. Fund*, 138 S. Ct. 1061, 1078–79 (2018).

A shareholder brought a facial challenge to those federal forum clauses. The Court of Chancery held them invalid. The Delaware Supreme Court reversed, but on narrow grounds. *Salzberg* held only that the challenged provisions were facially valid under Section 102(b)(1) of the Delaware General Corporation Law, which broadly defines what corporate charters and bylaws may contain. 8 Del. C. § 102(b)(1); *Salzberg*, 227 A.3d at 109, 113–14.

Accordingly, *Salzberg* neither applies to claims brought under the Exchange Act of 1934 nor bars securities plaintiffs from bringing as-applied challenges to federal forum provisions. Nothing in *Salzberg* suggests it would extend Section 109 (or Section 102(b)(1), for that matter) to allow application of the forum bylaw to a case like this one, where it would effectively bar plaintiff from bringing its derivative claims under the 1934 Act in *any* forum. To the contrary, the Delaware court stressed the harmony between Delaware corporation law and federal securities law: "This Court has viewed the overlap of federal and state law in the disclosure area as 'historic,' 'compatible,' and 'complimentary.'" 227 A.3d at 114, quoting *Malone v. Brincat*, 722 A.2d 5, 13 (Del. 1998). Even more to the point here, as noted above, *Salzberg* expressly presumed that the reference to "courts *in* this State" in the bylaws authorized by the new Section 115 included federal courts, 227 A.3d at 119, which the Boeing forum bylaw does not.

Defendants also contend that in *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A.3d 934 (Del. Ch. 2013), the

Delaware Court of Chancery held that Section 109(b) authorized a forum selection bylaw identical to the Boeing forum bylaw. Not quite, for there were critical differences. In *Boilermakers Fund*, the boards of two Delaware corporations, Chevron and FedEx, had adopted bylaws designating the Delaware Court of Chancery as the exclusive forum for four types of suits: derivative suits, fiduciary duty suits, suits under Delaware corporation law, and internal affairs suits. *Id.* at 942–43.

Plaintiffs were shareholders of Chevron and FedEx who alleged that the boards lacked statutory authority to adopt the bylaws. They sought a declaration that the bylaws were facially invalid and amounted to breaches of fiduciary duty. The Court of Chancery rejected the facial challenges, emphasizing that plaintiffs were required to show that the bylaws could not "operate lawfully or equitably *under any circumstances.*" *Id.* at 948.

In so holding, the court offered important observations about the purpose of Section 109(b), the nature of forum-selection bylaws, and hypothetical as-applied challenges—like this case—based on the enforcement of a forum-selection bylaw to eliminate federal jurisdiction. These observations make clear that Section 109(b) and *Boilermakers Fund* do not authorize enforcement of a forum-selection provision like the Boeing forum bylaw in a case like this one.

First, the Court of Chancery noted that Section 109(b) "has long been understood to allow the corporation to set 'self-imposed rules and regulations [that are] deemed expedient for its convenient functioning.'" 73 A.3d at 951, quoting *Gow v. Consolidated Coppermines Corp.*, 165 A. 136, 140 (Del. Ch. 1933). Generally speaking, the court continued, forum bylaws fit that description because they are "procedural" and

"process-oriented" rather than substantive. *Boilermakers Fund*, 73 A.3d at 951, quoting *CA, Inc. v. AFSCME Emps. Pension Plan*, 953 A.2d 227, 236–37 (Del. 2008). The court determined that the challenged forum-selection bylaws—directing shareholders to file their internal affairs claims in the state of Delaware (Chevron) and in the Delaware Court of Chancery (FedEx)—also fit that description: they regulated "*where* stockholders may file suit, not *whether* the stockholder may file suit or the kind of remedy that the stockholder may obtain on behalf of herself or the corporation." *Boilermakers Fund*, 73 A.3d at 952; see also *Salzberg*, 227 A.3d at 115 n.51 (reiterating *Boilermakers Fund* point that forum bylaws may regulate where—not whether—shareholders may file suit).

The *Boilermakers Fund* court then provided important guidance for this case. The court addressed the plaintiffs' attempts to identify hypothetical situations where the challenged bylaws would operate unreasonably by precluding plaintiffs from bringing claims—such as derivative claims under the Exchange Act of 1934—that must be brought in federal court. *Boilermakers Fund*, 73 A.3d at 961–62. The court explained that facially, "neither of the forum selection bylaws purports in any way to foreclose a plaintiff from exercising any statutory right of action created by the federal government." *Id.* at 962. In fact, the Chevron bylaw had been amended to avoid the problem we face here by expressly allowing cases to be filed in *federal* court in the state of Delaware. *Id.* at 961.

The plaintiffs asked a hypothetical question. Suppose the board of FedEx sought to enforce the forum bylaw to foreclose a plaintiff from bringing a claim within the exclusive jurisdiction of the federal courts? That's this case. The Delaware

Court of Chancery explained that in such a case, the board "would have trouble" for two reasons:

> First, a claim by a stockholder under federal law for falsely soliciting proxies does not fit within any category of claim enumerated in FedEx's forum selection bylaw. Thus FedEx's bylaw is consistent with what has been written about similar forum selection clauses addressing internal affairs cases: "[Forum selection] provisions do not purport to regulate a stockholder's ability to bring a securities fraud claim or any other claim that is not an intra-corporate matter." Second, the plaintiff could argue that if the board took the position that the bylaw waived the stockholder's rights under the Securities Exchange Act, such a waiver would be inconsistent with the antiwaiver provisions of that Act, codified at 15 U.S.C. § 78cc.

*Id.* at 962 (footnotes omitted). The first reason would not apply to plaintiff's derivative action here, but the second reason applies directly to it. While the Court of Chancery declined to "wade deeper into imagined situations" so as not to risk issuing an advisory opinion, its brief foray into how a hypothetical plaintiff might protect her not-so-hypothetical rights under the federal securities laws signals clearly enough that Delaware law would not look kindly on defendants' effort to apply the Boeing bylaw here.

In future cases, Delaware courts may address broader questions such as whether Section 109(b) would authorize a bylaw that violates Section 115, but it is sufficient for our purposes that the reasoning of *Boilermakers Fund* does not

authorize application of the Boeing forum bylaw to this case, where it would effectively foreclose a claim under federal securities law. The Court of Chancery made clear that enforcement of a forum bylaw to foreclose a plaintiff from exercising her rights under the Exchange Act of 1934 would be inconsistent with the anti-waiver provision of that Act. 73 A.3d at 962. No Delaware law, at least to our knowledge, authorizes such an inconsistency. To the contrary, *Salzberg*, *Boilermakers Fund*, and the new Section 115 codifying that decision signal clearly that Delaware is not inclined to enable corporations to close the courthouse doors entirely on derivative actions asserting federal claims subject to exclusive federal jurisdiction.

## IV. *Distinguishing Bremen and Bonny*

To avoid this result, defendants also argue that they seek only routine enforcement of a routine forum-selection clause in a contract, citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), and *Bonny v. Society of Lloyd's*, 3 F.3d 156 (7th Cir. 1993). The district court looked carefully at both cases and ultimately concluded that *Bonny* supported dismissal based on Boeing's forum bylaw. We explained above why we conclude that Boeing's forum bylaw, as applied to this case, simply is not enforceable under Delaware law. It may be useful, however, to explain why we also do not find *Bremen* or *Bonny* a sufficient basis for enforcing the forum bylaw here.

We begin with *Bremen*. Zapata, a company based in Texas, contracted with plaintiff Unterweser, a German corporation, to tow Zapata's drilling rig (the *Bremen*) from Louisiana to Italy. *M/S Bremen*, 407 U.S. at 2. The towing contract provided that any dispute arising from the contract must be brought before the London Court of Justice. The rig was damaged in a storm in international waters in the Gulf of Mexico. Zapata

directed Unterweser to tow the damaged rig to Tampa, Florida, the nearest port of refuge. A week later, Zapata—ignoring the terms of the contract—filed suit in federal court in Tampa for negligent towing and breach of contract. Unterweser invoked the forum-selection provision and moved to dismiss for forum non conveniens. The district court denied Unterweser's motion and concluded that Zapata's choice of forum should not be disturbed. The Fifth Circuit affirmed.

The Supreme Court reversed, teaching that such forum-selection provisions in contracts are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." 407 U.S. at 10. The Court explained that there were "compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power" should be fully enforced. *Id.* at 12.

In the *Bremen* opinion itself, the Court emphasized the international character of the transaction, where choice-of-forum and choice-of-law agreements may be especially helpful in case of disputes. Later cases show, however, that *Bremen* stands for the broader proposition that contractually valid choice-of-forum clauses will ordinarily be enforced. See, e.g., *Atlantic Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49, 62–64 (2013); *Mueller*, 880 F.3d at 894, quoting *Atlantic Marine*, 571 U.S. at 64 ("forum-selection clauses should control except in unusual cases").

*Bremen* differs from this case most importantly in that it involved a purely private contractual dispute. It did not involve any claim under a federal statute, let alone a federal statute with a non-waiver provision like Section 29(a) of the Exchange Act. While the Supreme Court has generally been

receptive to enforcing contractually valid forum-selection clauses, neither *Bremen* nor other decisions have endorsed such clauses as paths to avoid otherwise applicable federal statutes. Instead, the Court has warned against such uses.

In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Corp.*, 473 U.S. 614 (1985), Chrysler asserted claims against Mitsubishi, including an antitrust claim under United States law. The parties' contract required arbitration of disputes in Japan. The Supreme Court enforced the clause and ordered the parties to resolve their disputes in arbitration rather than in a court. The Court did so, however, only after being assured that the arbitration panel would apply United States antitrust law, and only after issuing a pointed warning against using an arbitration clause to avoid an otherwise-applicable federal statute, even one without an anti-waiver provision like the 1934 Exchange Act's Section 29(a). *Id.* at 636–38, 637 n.19.

The agreement between Mitsubishi and Chrysler also said it would be governed by Swiss law. *Id*. at 637 n.19. In an amicus brief, the United States had raised the possibility that the arbitral panel might read this choice-of-law provision as governing not only the terms of the contract but also as displacing United States law, including the Sherman Act, where it would otherwise apply. Mitsubishi had told the Court in oral argument that it was not trying to avoid application of the Sherman Act by that device. Despite that assurance, the Court still went out of its way to warn against that possibility: "in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy." *Id.* (citations omitted).

That considered warning carries even more force in this case under the Exchange Act of 1934, with its anti-waiver provision. In short, neither *Bremen* nor the more general policy in favor of enforcing contractual forum-selection clauses supports application of Boeing's forum bylaw to foreclose entirely plaintiff's derivative Section 14(a) claims.

Turning to this court's decision in *Bonny v. Society of Lloyd's*, defendants emphasize that we enforced choice-of-law and forum-selection provisions that had the effect of foreclosing plaintiffs' claims under federal securities law. We did so after being satisfied that English law would provide sufficient protection and remedies. 3 F.3d at 161–62. Defendants contend the same reasoning should apply to remedies under state law in this case, and the district court agreed. We disagree because of a critical difference between *Bonny* and this case that limits its reasoning.

The plaintiffs in *Bonny* were United States citizens who had invested in the English insurer, Lloyd's of London. The investment agreements provided that any disputes arising out plaintiffs' investments with Lloyd's would be governed by English law and that the courts of England would have exclusive jurisdiction over such disputes. After sustaining heavy losses, plaintiffs sued Lloyd's in the Northern District of Illinois alleging claims under Section 12 of the Securities Act of 1933 and Section 10(b) of the Exchange Act of 1934. The district court dismissed the suit based on the forum-selection clause. *Id.* at 157. We affirmed, reasoning that the choice-of-law and forum-selection provisions did not violate United States public policy and were therefore enforceable despite plaintiffs' reliance on the anti-waiver provisions of the 1933 and 1934 Acts.

The lack of a true conflict between English law and applicable United States law was central to our decision. 3 F.3d at 161–62. First, citing *Bremen*, we noted that choice-of-law and forum-selection provisions in agreements between domestic and foreign businesses are "valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Id.* at 159, quoting *Bremen*, 407 U.S. at 10. The plaintiffs in *Bonny*, much like the plaintiffs in *Bremen*, had failed to demonstrate that the provisions at issue were unreasonable. *Bonny*, 3 F.3d at 160. Further, echoing the Supreme Court's language in *Bremen*, *Mitsubishi Motors*, and *Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974), we explained that the presumptive validity of such provisions offered valuable predictability in international business transactions. *Bonny*, 3 F.3d at 159–60, discussing *Mitsubishi Motors*, 473 U.S. at 629, and *Scherk*, 417 U.S. at 516.

Even so, we harbored "serious concerns that Lloyd's clauses operate[d] as a prospective waiver of statutory remedies for securities violations," but in the end we were "satisfied that several remedies in England vindicate[d] plaintiffs' substantive rights while not subverting" the principles of full and fair disclosure protected by the Securities Act of 1933. *Bonny*, 3 F.3d at 160–61.[3] The international nature of the transactions and the availability of adequate remedies under British law convinced us that the forum-selection and choice-of-

---

[3] In *Bonny*, the record showed that English law afforded plaintiffs a cause of action similar to their claims under Section 10(b) of the Exchange Act of 1934 and Rule 10b-5. 3 F.3d at 161. There were no English rights and remedies similar to those under Sections 12(1) and 12(2) of the Securities Act of 1933. *Id.* at 162.

law provisions were enforceable despite the anti-waiver pro-
visions in the 1933 and 1934 Acts. *Id.* at 162.[4]

Defendants argue that we should extend the same
analysis—focused on the sufficiency of remedies under state
law—to enforce Boeing's forum bylaw here. That argument
overlooks the decisive role that the international character of
the dispute played in *Bonny*. The English remedies were
deemed sufficient *only* in light of the international nature of
the investment agreements: "Given the international nature of
the transactions involved here, and the availability of
remedies under British law that do not offend the polices
behind the securities laws, the parties' forum selection and
choice of law provisions contained in the agreements should
be given effect." 3 F.3d at 162.

There is no hint in *Bonny* that the same logic and result
would apply to a domestic transaction's forum-selection

---

[4] *Bonny* is consistent with decisions in other circuits balancing these
competing interests when parties to *international* investments agree on for-
eign forums and foreign law. For example, in *Haynsworth v. The Corpora-
tion*, 121 F.3d 956 (5th Cir. 1997), the Fifth Circuit reiterated that United
States courts should "tread cautiously before expanding the operation of
U.S. securities law in the international arena," particularly "in the case of
England, a forum that American courts repeatedly have recognized to be
fair and impartial." *Id.* at 966–67 (footnote omitted). For similar holdings,
see *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294–96 (9th Cir. 1998) (en
banc); *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1364–66 (2d Cir. 1993);
*Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 958 (10th Cir.
1992); *AVC Nederland B.V. v. Atrium Inv. P'ship*, 740 F.2d 148, 158–59 (2d
Cir. 1984) (Section 29(a) did not prevent enforcement of choice of Dutch
forum and law). These decisions all seem generally consistent with the Su-
preme Court's later decision in *Morrison v. National Australia Bank*, 561 U.S.
247 (2010), which limited extraterritorial application of United States se-
curities laws.

clause that had the effect of waiving federal securities rights and remedies and leaving the investor to only state-law remedies. To the contrary, extending *Bonny* to domestic investments and state-law remedies would undermine the pivotal decisions by Congress in 1933 and 1934 to assume the dominant role in securities regulation after decades of ineffective state regulation. Both federal Acts contain anti-waiver provisions that prevent parties from opting out of the federal laws in favor of state law, no matter how similar or strong the state-law rights and remedies are. See 15 U.S.C. §§ 77n & 78cc(a).

As applied to plaintiff's Section 14(a) claims, Boeing's forum bylaw does not implicate the unique needs of international trade or require us to parse the similarities and differences between foreign and domestic securities laws. The anti-waiver provision of Section 29(a) does not invite a determination of whether state law offers alternative remedies that might be deemed sufficient against an inchoate standard. Non-waiver is woven into the public policy of the federal securities laws because it is the express statutory law. And that law is binding—especially where, as here, there are no countervailing international policy interests at stake. Accord, *Luce v. Edelstein*, 802 F.2d 49, 57 (2d Cir. 1986) (forum-selection clause provided for only state-court jurisdiction; district court correctly dismissed most claims but retained jurisdiction over Exchange Act claims); *KDH Consulting Grp. LLC v. Iterative Capital Mgmt. L.P.*, 2020 WL 7251172, at *9 (S.D.N.Y. June 29, 2020) (following *Luce*, retaining Exchange Act claims but dismissing other claims).

*Bonny* required a choice between United States law and policy and foreign law and policy. Here, however, we see no comparable tension between federal law and policy and

Delaware state law and policy. After all, under the Supremacy Clause of the United States Constitution, state courts enforce and apply both state and federal law. See *Claflin v. Houseman*, 93 U.S. 130, 136 (1876) ("The law of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are. The United States is not a foreign sovereignty as regards the several States, but is a concurrent, and, within its jurisdiction, paramount sovereignty."), cited in *Brandon v. Anesthesia & Pain Mgmt. Assocs.*, 277 F.3d 936, 942 (7th Cir. 2002) (Illinois courts would recognize claim for retaliatory discharge in violation of Illinois public policy where employer fired employee for objecting to violations of federal anti-fraud law). The Delaware Court of Chancery's opinion in *Boilermakers Fund* shows no relevant tension between Delaware corporation law and public policy and federal securities law and policy. Instead, as noted, the Court of Chancery said that the defendant corporations would run into trouble under the Exchange Act's anti-waiver provision in Section 29 if they tried to apply their forum-selection provisions to foreclose entirely claims under the Exchange Act. 73 A.3d at 962.[5]

Finally, our dissenting colleague proposes an entirely different solution for the puzzle at this intersection of state

---

[5] For all of these reasons, we respectfully disagree with relevant portions of several district court decisions that have extended the reasoning of *Bonny* beyond its international foundations to enforce forum-selection clauses that had the effect of foreclosing claims under otherwise-applicable federal securities laws and leaving plaintiffs to only state-law remedies. See *Spenta Enterprises, Ltd. v. Coleman*, 574 F. Supp. 2d 851, 857 (N.D. Ill. 2008), followed in *Solid Q Holding, LLC v. Arenal Energy Corp.*, 2017 WL 935891, at *2 n.17 (D. Utah Mar. 8, 2017), and *Vernon v. Stabach*, 2014 WL 1806861, at *6 (S.D. Fla. May 7, 2014).

corporation law, federal securities law, and federal jurisdiction and venue rules. The dissent's proposed solution would be to allow a Delaware state court to hear a derivative action under Section 14(a), despite the Exchange Act's provision for exclusive federal jurisdiction in Section 29(a). As a matter of policy, that solution might well be a reasonable outcome, at least under a different set of federal statutes and precedents. That solution, however, is not consistent with our reading of either Delaware law, the Exchange Act's exclusive federal jurisdiction, *Borak*'s recognition of derivative claims under Section 14(a), or the Supreme Court's caution in the *Mitsubishi* case, 473 U.S. at 637 n.19, against using choice-of-forum and choice-of-law clauses to attempt prospective waivers of federal statutory remedies.

Notably, defendants have not advocated for the dissent's novel proposal to send this dispute to state court in Delaware. The defendants have instead argued all along for their preferred Catch-22 result that would bar plaintiff's derivative Section 14(a) claim in *any* forum. Also, the dissent does not cite any precedent adopting its solution for this case. In our view, a state court would have to be bold indeed to adopt that solution and to exercise jurisdiction over this derivative claim despite Section 29(a), the lack of support from either side in this lawsuit, and the Supreme Court's warning in footnote 19 of the *Mitsubishi* case. See also *Cottrell v. Duke*, 737 F.3d 1238, 1247–48 (8th Cir. 2013) (reversing *Colorado River* abstention over shareholder derivative action under Section 14(a) because Delaware state court could not exercise jurisdiction over that claim in parallel derivative action).

It may or may not be true, as the dissent suggests, that Delaware *could* abolish or further restrict derivative claims based

No. 20-2244                                                25

on federal laws in ways consistent with the dissent's views. We decline to speculate on the point because Delaware has not yet done so or signaled its intention to do so. Unless and until it does, the better course is to hold that Boeing's forum bylaw cannot be applied to this derivative action asserting a claim that is subject to exclusive federal jurisdiction.

The judgment of the district court is REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.

EASTERBROOK, *Circuit Judge*, dissenting. Page 2 of my colleagues' opinion sums up their rationale: "Because the federal Exchange Act gives federal courts exclusive jurisdiction over actions under it, applying the bylaw to this case would mean that plaintiff's derivative Section 14(a) action may not be heard in any forum." They deem that outcome unacceptable. Yet plaintiff retains its right to sue directly under §14(a) in federal court, and jurisdiction to enforce the Exchange Act is not exclusive in the way my colleagues understand it. This means that litigating the proposed derivative suit in state court is not problematic.

Section 14(a), 15 U.S.C. §78n(a), says that it is unlawful for any person to solicit proxies in violation of a rule issued by the SEC. It does not say one word about enforcement, nor does any other part of the Exchange Act. Federal judges created a private right of action—and the action thus created is one that permits investors to sue issuers, not one that permits issuers (the authors of the contested documents) to sue. See *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991); *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1 (1977). Nothing in Boeing's bylaw strips plaintiff, as a recipient of proxy materials, of the ability to file a direct §14(a) action in federal court. And since plaintiff retains that ability, it is hard to see how it has been deprived of a right to enforce §14(a).

Recall what a derivative action is. An investor who wants a corporation to sue members of its own board or management proceeds in multiple steps. First the investor demands action from the board. If the board says no, the investor sues the directors seeking a judicial order compelling them (or permitting the investor on their behalf) to require the corporation to sue. If a court issues such an order, the corporation

(perhaps represented by the investor as its agent) litigates against the directors. The first two steps, which address the question "Who speaks for the corporation?", are matters of corporate internal affairs under state law. So *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991), holds with respect to derivative suits whose ultimate (third) step would rest on federal law. It is state law, *Kamen* tells us, that determines both when demand is required and when investors can step into a corporation's shoes. And the third step—in which a corporation, author of the proxy materials, sues its own directors—also rests on state law. Plaintiff's theory at the third step would be that the directors violated their state-law duty of care by permitting Boeing to do things that exposed it to liability under federal law. Section 14(a) plays a role in such litigation, to be sure, but does not create the claim. Nor is the derivative claim necessary to enforce the federal rule, which is done through investors' or the SEC's direct suits.

Suppose Delaware were to abolish derivative suits. Investors still could sue managers for violating the state-law duties of care or loyalty. Investors still could sue companies under statutes such as §14(a). Would abolishing derivative actions violate federal law? I can't see how. And if states can abolish derivative suits without violating §14(a), they can permit corporations to establish conditions on derivative suits. The federal right is for investors or the SEC to sue directly. Many investors *have* sued Boeing directly about the 737 MAX debacle. A derivative suit adds only a procedural snarl.

*Virginia Bankshares* holds that the existence of a private right of action under §14 cannot be taken for granted. It is not an on/off matter, in which every possible claim in the name of §14 is proper. Instead the judiciary proceeds theory by theory.

The Supreme Court has never held or even intimated that there is a federal right to pursue a derivative claim under §14(a) when the investor can pursue a direct claim. *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964), holds that §14 supports a derivative claim when its denial would "be tantamount to a denial of federal relief"; that condition does not hold when the private plaintiff can pursue a direct action in federal court.

*Virginia Bankshares* treats *Borak* as limited to its facts and declines to extend private rights under §14(a) to new theories. In the 30 years since, the Justices have told us that the days of authorizing private actions in common-law fashion are over. See, e.g., *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1402 (2018) (describing the Court's "reluctance to extend judicially created private rights of action"). *Borak* is now a derelict. We should not expand it to a situation in which private rights can be enforced in direct suits.

As for the supposed exclusivity of jurisdiction under the Exchange Act: since per *Kamen* at least the first two steps rest on state law, it is hard to see how federal jurisdiction over derivative litigation could be exclusive. Congress has recognized this. For 61 years the Securities Exchange Act of 1934 did not mention derivative litigation. That changed in 1995, with the Private Securities Litigation Reform Act. One feature of this statute, which amends the 1934 Act, permits issuers to remove suits filed, nominally under state law, when the subject matter comes within the scope of federal law. See generally *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006). But derivative suits can't be removed. See 15 U.S.C. §77p(f)(2)(B). Congress thus has told us that derivative suits related to securities matters may begin in state court—and, if

they begin there, stay there. That's inconsistent with my colleagues' view that they must be in federal court.

Section 27(a) of the Exchange Act, 15 U.S.C. §78aa(a), provides for exclusive jurisdiction of claims arising under the Exchange Act and the SEC's rules, but a derivative suit arises under state law even if a federal issue may come to the fore eventually. More: *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987), treats exclusivity under §27(a) as a right that people may waive. 482 U.S. at 227–38. It added that the anti-waiver clause in §29(a), 15 U.S.C. §78cc(a), is limited to the Act's substantive standards. This meant in *McMahon* that issuers and investors are free to agree to arbitration. *McMahon*'s reasoning means that other forum-selection agreements are permissible—after all, the Court deems arbitration a kind of forum-selection agreement, which *Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974), held to be compatible with the Exchange Act. The provision in Boeing's bylaws is just another forum-selection clause. (Under Delaware law, bylaws are contracts between corporations and investors. See *ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554, 558 (Del. 2014).) The bylaw waives any right to exclusive federal jurisdiction. Delaware will provide whatever substantive relief is appropriate, if its judiciary first holds that plaintiff can litigate on Boeing's behalf.

Any doubt could be resolved by decomposing a derivative claim into its components: the first two steps in state court under state law, and the third (if the state judiciary authorizes plaintiff to represent Boeing) in federal court. That would do minimal damage to Delaware law and Boeing's bylaw. The majority's approach, by contrast, demolishes a sensible state scheme.

I acknowledge that Boeing has not relied on *Kamen*, *McMahon*, or *Virginia Bankshares*. The principle of party presentation normally limits a federal court to resolving the parties' contentions. See *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020). Yet Boeing has vigorously defended the validity of its bylaw, though it has slighted the choice-of-law considerations that I have stressed. A federal court is not bound by litigants' beliefs about the meaning of a jurisdictional provision such as §27(a). We must resolve jurisdictional issues correctly no matter what the parties say or omit. And *Kamen* concerns the appropriate treatment of parties' mistaken assumption that federal procedures govern derivative litigation in which there is a federal substantive issue. Both sides in *Kamen* told this court that federal substance implies federal procedures for derivative litigation; they disagreed only about what those procedures should be. After we devised a federal rule about demand on the board of directors, the Supreme Court reversed us for accepting the parties' mutual assumption. The Justices told us to apply state law to procedural matters in derivative suits, no matter the source of the substantive theory. We should not make the same mistake again.

None of what I have said so far would matter if, as the majority concludes, Boeing's bylaw is unlawful under Delaware law. Yet my colleagues' analysis of that subject is colored by their belief that the bylaw extinguishes a right under federal law. I've shown why that is not so.

Read on its own terms, 8 Del. Code §115 does not prohibit Boeing's bylaw. The statute provides:

> The certificate of incorporation or the bylaws may require, consistent with applicable jurisdictional requirements, that any or all

> internal corporate claims shall be brought solely and exclusively in any or all of the courts in this State, and no provision of the certificate of incorporation or the bylaws may prohibit bringing such claims in the courts of this State. "Internal corporate claims" means claims, including claims in the right of the corporation, (i) that are based upon a violation of a duty by a current or former director or officer or stockholder in such capacity, or (ii) as to which this title confers jurisdiction upon the Court of Chancery.

This does not prohibit bylaws that limit derivative claims to state court. To the contrary, it authorizes such bylaws and prohibits only those that *prevent* litigation in state court. Boeing's bylaw does not transgress that rule.

Suppose we treat plaintiffs' derivative suit as something other than an "internal corporate claim[]"—I think that it is one, but suppose otherwise. That would make §115 irrelevant. It would neither authorize nor prohibit the bylaw.

The most authoritative word about the meaning of §115 comes from the Supreme Court of Delaware.

> Section 115 merely confirms affirmatively … that a charter may specify that internal corporate claims must be brought in "the courts in this State" … while prohibiting provisions that would preclude bringing internal corporate claims "in the courts of this State." Section 115, read fairly, does not address the propriety of forum-selection provisions applicable to other types of claims. If a forum-selection provision purports to govern intra-corporate litigation of claims that do not fall within the definition of "internal corporate claims," we must look elsewhere … to determine whether the provision is permissible.

*Salzberg v. Sciabacucchi*, 227 A.3d 102, 119 (Del. 2020). This tells us that §115 either supports Boeing's bylaw or is irrelevant to it. My colleagues say that 8 Del. Code §109(b), on which Boeing relies as the "elsewhere," does not authorize its bylaw because §115, as the more specific law, takes precedence. Yet

*Salzberg* directs courts to look outside §115 unless the bylaw does something that §115 forbids—and §115 forbids only provisions that block litigation in Delaware. Section 109(b) is a general grant of authority to adopt bylaws. Given the understanding of §115 in *Salzberg,* §109(b) is adequate to the task.

I accept my colleagues' observation that federal district courts are courts "in" each state, but this does not have the significance they see in "in". Section 115 says that a bylaw may call for litigation "exclusively in *any or all* of the courts in this State" (emphasis added). Just as a federal district court is "in" Delaware, so is the state's Court of Chancery. The option to choose among "any" of the courts "in" Delaware gives Boeing the right to do exactly what it has done. My colleagues, by contrast, read "any or" out of §115, leaving only "all" as an option.

I end where I began, just as my colleagues have done. Their beginning is a belief that the bylaw coupled with §27(a) strips plaintiff of a federal right to litigate a derivative §14(a) claim. But if there is no such thing as a derivative §14(a) claim divorced from state corporate law, if derivative suits are proper in state courts, and if exclusivity under §27(a) is waivable—indeed, if any one of these three propositions holds—then there is no problem with litigating plaintiff's claim in the courts of Delaware.