UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

_____

SEAFARERS PENSION PLAN, derivatively )
on behalf of THE BOEING COMPANY, )
                                                  Plaintiff,

v.

ROBERT A. BRADWAY, *et al.*,

                                                Defendants,
and

THE BOEING COMPANY,

                                     Nominal Defendant.
_____

DOCKET NO. 1:19-cv-08095

**PLAINTIFF SEAFARERS PENSION PLAN'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | | PRELIMINARY STATEMENT | 1 |
| II. | | BACKGROUND AND PROCEDURAL HISTORY | 3 |
| | A. | Boeing's 737 MAX Accidents, Grounding, and Plaintiff's Related Books & Records Demand under Delaware's Section 220 | 3 |
| | B. | Procedural History of the Federal Action, Including the Seventh Circuit Appeal | 4 |
| | C. | The Delaware Action | 5 |
| | D. | The Parties Engage in Arms-Length Mediation | 6 |
| III. | | THE TERMS OF THE PROPOSED SETTLEMENT | 6 |
| IV. | | ARGUMENT | 8 |
| | A. | The Standards Governing Preliminary Approval | 8 |
| | | 1. The Proposed Settlement is Reasonable in Light of the Risks and Costs in Further Litigation | 10 |
| | | 2. Continuing the Federal Action Will Be Complex, Time-Consuming, and Expensive | 12 |
| | | 3. It is Too Early to Evaluate Objections to the Proposed Settlement | 12 |
| | | 4. Plaintiff's Counsel is Experienced in Derivative Litigation and Believes the Proposed Settlement of the Federal Action is Fair and Reasonable | 13 |
| | | 5. The Stage of the Proceedings Supports Approval of the Settlement | 13 |
| | B. | Attorneys' Fees and Expenses | 14 |
| | C. | The Proposed Notice is Adequate and Reasonable | 14 |
| V. | | CONCLUSION | 15 |

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Activision Blizzard, Inc. S'holder Litig.*,
  124 A.3d 1025 (Del. Ch. 2015)..................................................................................................12

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980), *overruled on other grounds by Felzen v.
  Andreas*, 134 F.3d 873 (7th Cir. 1998) ..............................................................................8, 9, 13

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010)..............................................................................................8, 9, 12

*City of Plantation Police Officers' Employees' Retirement System v. Jefferies*,
  2014 WL 7404000 (D.D. Ohio Dec. 30, 2014) .......................................................................9

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
  768 F.2d 884 (7th Cir.1985) ....................................................................................................9

*Granada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) .................................................................................................10

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ...................................................................................................9

*Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*,
  Nos. 05 C 5944 & 07 C 2439, 2007 WL 4105204 (N.D. Ill. Nov.14, 2007).............................9

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ...................................................................................................11

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970).................................................................................................................12

*In re Pfizer Inc. S'holder Derivative Litig.*,
  780 F. Supp. 2d 336 (S.D.N.Y. 2011).......................................................................................11

*In re Pub. Servs. Co. of Ind. Derivative Litig.*,
  125 F.R.D. 484 (S.D. Ind. 1988)...............................................................................................8

*Schulte v. Fifth Third Bank*,
  805 F.Supp.2d 560 (N.D. Ill. 2011) .........................................................................................13

*Seafarers Pension Plan* v. *Bradway*,
  23 F.4th 714 (7th Cir. 2022) (mandate issued January 31, 2022)............................................5

*Seafarers Pension Plan* v. *Bradway, et al.*,
 C.A. No. 2020-0556-MTZ ..................................................................................................5

*Thacker v. Chesapeake Appalachia, L.L.C.*,
 695 F. Supp. 2d 521 (E.D. Ky. 2010), *aff'd sub nom., Poplar Creek Dev. Co.
 v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011)..........................................10

*Uhl v. Thoroughbred Tech. and Telecomm., Inc.*,
 309 F.3d 978 (7th Cir. 2002) ................................................................................................9

**Statutes**

Delaware General Corporation Law Sections 115 and 109(b) .......................................................5

Securities and Exchange Act of 1934 ................................................................................. *passim*

Plaintiff Seafarers Pension Plan ("Plaintiff" or "Seafarers") respectfully submits this Memorandum of Law in support of its unopposed motion for preliminary approval of the proposed settlement of this Action, as set forth in the Stipulation and Agreement of Compromise, Settlement, and Release, dated August 10, 2022 ("Stipulation" or "Federal Settlement") between Seafarers, the Defendants[1] and nominal Defendant, The Boeing Company ("Boeing").

## I. PRELIMINARY STATEMENT

Plaintiff, Defendants and Boeing have reached a global settlement to resolve this federal derivative action asserting proxy claims under the Securities and Exchange Act of 1934 and a related putative class action filed by Plaintiff that is pending in the Delaware Court of Chancery.[2] The settlement is contingent on this Court and the Delaware Court approving the global settlement reflected in the Settlement Stipulations being filed in both Actions, which are identical except for the party signatories. If approved by this Court and the Delaware Court, the settlement will result in a final dismissal of both Actions and a release of all claims.

Under the terms of the Federal Settlement: (1) Boeing will receive a monetary payment of $6.25 million less attorneys' fees and expenses to Plaintiff's counsel and any service award to Plaintiff from the Individual Defendants' insurers to settle the Federal Action; and (2) Boeing's board of directors will amend the Company's forum selection by-law ("Forum Bylaw") to settle both the Federal Action and the Delaware Action. The amended Forum Bylaw will allow Boeing's stockholders to file exclusively federal derivative claims in two different federal jurisdictions. This important corporate governance reform provided by the settlement will eliminate the Company's

---

[1] Federal Defendants refers to Robert A. Bradway, David L. Calhoun, Arthur D. Collins Jr., Edmund P. Giambastiani Jr., Lynn J. Good, Lawrence W. Kellner, Caroline B. Kennedy, Edward M. Liddy, Dennis A. Muilenburg, Susan C. Schwab, Randall L. Stephenson, Ronald A. Williams, and Mike S. Zafirovski.

[2] "Federal Action" refers to this derivative action, and "Delaware Action" refers to the Seafarers' action filed in Delaware Court of Chancery (the "Delaware Court"). "Actions" refers to both the Federal Action and the Delaware Action.

1

Forum Bylaw, which had prevented the federal derivative claims at issue in this case, or any other exclusively federal derivative claim, from being brought.

Further, the proposed settlement contemplates that the Federal Settlement Hearing to consider final approval of the Federal Settlement will occur first, and if and when final approval of the Federal Settlement is obtained, the Plaintiff will seek final approval of the Delaware Settlement from the Delaware Court. The proposed global settlement will become effective only after final approval is granted by both courts. For efficiency purposes, Plaintiff Counsel's application for an award of attorneys' fees and expenses and Plaintiff's service award for litigating both Actions will be adjudicated before this Court.

The proposed settlement was reached after hotly contested litigation in this Court and the Delaware Court, which involved motions to dismiss in both courts and an appeal to the Seventh Circuit Court of Appeals. Notably, after this case was dismissed at the motion to dismiss stage on *forum non conveniens* grounds based on the Company's Forum Bylaw, Plaintiff prevailed on its appeal before the Seventh Circuit on an important issue affecting all shareholders – their right to assert derivative claims under the Securities Exchange Act of 1934, which fall exclusively within federal court jurisdiction. Further, after the Federal Action was dismissed, Plaintiff filed a declaratory class action in Delaware Court, challenging the Forum Bylaw's validity under Delaware law and asserting breach of fiduciary duty claims for its maintenance and use. The Delaware Action was stayed while Plaintiff's federal appeal was pending after full briefing on Defendants' motion to dismiss.

The proposed settlement is the product of serious, informed and non-collusive negotiations between the parties in the Actions. The parties participated in a full-day mediation conducted by an experienced and highly regarded mediator, Gregory Danilow, Esq. of Phillips ADR. The mediation

2

efforts were followed by extensive, arm's-length, and hard-fought negotiations over the next seven weeks facilitated by Mr. Danilow before the parties reached an agreement in principle.

Plaintiff and its counsel submit that the proposed settlement that resulted is fair, reasonable and adequate, and in the best interests of Boeing and its stockholders. As such, Plaintiff respectfully requests that the Court grant preliminary approval of the Federal Settlement for the purpose of providing notice, approve the form and manner of the parties' proposed notice to Boeing stockholders, and schedule a Federal Settlement Hearing.

## II. BACKGROUND AND PROCEDURAL HISTORY

### A. Boeing's 737 MAX Accidents, Grounding, and Plaintiff's Related Books & Records Demand under Delaware's Section 220

On October 29, 2018, a Boeing 737 MAX aircraft, Lion Air Flight 610, crashed off the coast of Indonesia (the "Lion Air Accident"). Then, on March 10, 2019, a Boeing 737 MAX aircraft, Ethiopian Airlines Flight 302, crashed in Ethiopia (the "Ethiopian Airlines Accident," together with the Lion Air Accident, the "Accidents"). On March 13, 2019, the Federal Aviation Administration ("FAA") grounded Boeing's global fleet of 737 MAX aircraft, as had other international regulating authorities (the "Grounding").

On April 15, 2019 and May 16, 2019, Plaintiff made demands for documents under 8 *Del.* § 220 to Boeing related to the Accidents and the Grounding. Seafarers then engaged in extensive negotiations with Boeing through multiple written communications and related meet and confers concerning the demands. Over the period from July 2019 through May 2020, Boeing produced more than 13,400 pages of documents in response to the demands, consisting of Boeing's Board and its Committees' meeting minutes, and presentations, and emails between Boeing's CEO and the rest of the Board.

3

### B. Procedural History of the Federal Action, Including the Seventh Circuit Appeal

On December 11, 2019, Seafarers filed a stockholder derivative action in this Court, *Seafarers Pension Plan* v. *Bradway, et al.*, No. 1:19-cv-08095, against Boeing's current and former directors and officers,[3] and Boeing as nominal defendant, alleging violations of Section 14(a) of the Securities and Exchange Act of 1934 arising from the 2017, 2018, and 2019 Proxy Statements (Count I), as well as breach of fiduciary duty and other Delaware state law claims (Counts II-IV).

Count I of Plaintiff's 225-page complaint (the "Federal Complaint") alleges, among other things, that Boeing's 2017 Proxy Statement, 2018 Proxy Statement, and 2019 Proxy Statement each contained misleading statements related to Boeing's "recommendation[s] to re-elect . . . directors, approve certain executive compensation, and vote against stockholder proposals to adopt a policy to require an independent Chairman," omitting material information about, among other things, Boeing's 2015 settlement with the FAA and the development, operation and safety of the 737 MAX fleet. The Federal Complaint also alleges that Boeing's 2019 Proxy Statement omitted material information concerning the Accidents, the Grounding, and regulatory and safety matters.

On February 13, 2020, the Defendants filed a motion to dismiss Plaintiff's federal proxy claims for *forum non conveniens* asserting that the Forum Bylaw precluded Plaintiff from asserting its action derivatively in the federal court. On the same day, the Parties filed a joint motion to dismiss Plaintiff's state law claims (Counts II-IV of the Federal Complaint) without prejudice and asked the Court to set a schedule for briefing the Defendants' motion to dismiss the remaining claim in the Federal Complaint (Count I) for *forum non conveniens*.[4]

---

[3] *See* footnote 1 *supra.*

[4] On February 18, 2020, this Court granted the Parties' joint motion to dismiss Counts II-IV of the Federal Complaint and, as a result, the additional defendants originally named, Linda Cook, W. James McNerney, Jr. Kevin McAllister, Raymond Conner, Greg Smith, J. Michael Luttig, Greg Hyslop, Diana Sands, John Tracy, and Scott Fancher, were dismissed from this action.

Following briefing on the motion to dismiss, on June 8, 2020, the Court dismissed the Federal Complaint for *forum non conveniens* on the basis that, as applied to Plaintiff's claims, Boeing's Forum Bylaw required Plaintiff to file its federal derivative claims in Delaware state court – which lacks jurisdiction to hear such a claim. On July 9, 2020, Plaintiff filed a notice of appeal of the order to the U.S. Court of Appeals for the Seventh Circuit, *Seafarers Pension Plan* v. *Bradway*, No. 20-2244. After briefing and oral argument, on January 7, 2022, a three-judge panel of the Court of Appeals issued a decision, with one judge dissenting, holding that the Forum Bylaw violated both federal and Delaware law and therefore was not enforceable as applied to Plaintiff's Proxy Claims. The dismissal order was then reversed, and the case remanded for further proceedings consistent with the Seventh Circuit's opinion (*see Seafarers Pension Plan* v. *Bradway*, 23 F.4th 714 (7th Cir. 2022) (mandate issued January 31, 2022)).

### C. The Delaware Action

On July 8, 2020, approximately one month after the Court dismissed the Federal Action, Plaintiff filed a class action complaint (the "Delaware Complaint") on behalf of Boeing stockholders against Boeing and certain current and former directors and officers of Boeing in the Delaware Court, *Seafarers Pension Plan* v. *Bradway, et al.*, C.A. No. 2020-0556-MTZ. Specifically, the Delaware Complaint sought a declaratory judgment that Boeing's Forum Bylaw violated Delaware General Corporation Law Sections 115 and 109(b) (Counts I and II) and alleged that the Delaware Individual Defendants breached their fiduciary duties by "maintaining and invoking" the Forum Bylaw, "failing to correct and/or rescind" the Forum Bylaw after the passage of Section 115, and "affirmatively asserting" the Forum Bylaw, including against Plaintiff in the Federal Action (Count III).

On August 28, 2020, the Delaware Defendants moved to dismiss the Delaware Complaint. On January 13, 2021, the Delaware Court held a hearing on the Delaware Defendants' fully briefed motion to dismiss and ruled that in the "interests of litigative efficiency, judicial economy, and

5

comity," it was staying the Delaware Action "indefinitely" pending the "final resolution of the federal court's views on the bylaw's validity, including on any remand."

### D. The Parties Engage in Arms-Length Mediation

On November 1, 2021, counsel for the Parties began settlement discussions related to both Actions, and, after failing to reach agreement on resolution of the claims, in December 2021 retained an independent mediator, Mr. Danilow of Phillips ADR, to explore the possibility of a negotiated resolution. Mr. Danilow has four decades of experience in complex commercial disputes, including previously working with retired Judge Layn Phillips to assist in mediating the resolution of a separate derivative action related to the Accidents involving state law fiduciary duty claims, *In re The Boeing Co. Derivative Litig.*, C.A. No. 2019-0907-MTZ (Del. Ch.).

Over the next few months, Mr. Danilow conducted negotiations with the parties. On March 1, 2022, a mediation was held before Mr. Danilow with the parties, their counsel, and certain of Boeing's insurers in both Actions. No agreement was reached during the full-day mediation. In the seven weeks following the mediation, Mr. Danilow, continued his efforts by telephone and videoconference. On April 18, 2022, with the assistance of Mr. Danilow, the parties reached an agreement in principle to settle the Actions. The parties thereafter negotiated the terms of the settlement stipulations, which were executed on August 10, 2022. The Federal Stipulation is attached hereto as Exhibit A, along with its exhibits, to the Declaration of Carol V. Gilden.

### III. THE TERMS OF THE PROPOSED SETTLEMENT

The key terms of the Proposed Settlement, which is fully supported by all parties in this action (and in the Delaware Action), are summarized below:

**Consideration**: The Proposed Settlement contains two components. *First*, Defendants' insurers will pay $6.25 million to Boeing, less attorneys' fees and expenses awarded to Plaintiff's Counsel and any service fee to Plaintiff. Ex. A, Settlement Stipulation ¶60. *Second*, Boeing will adopt

6

the significant bylaw amendment detailed in Exhibit A to the parties' Settlement Stipulation. *Id.* at ¶61. Specifically, as part of the Proposed Settlement, Boeing's Forum Bylaw will be revised as follows (with new language underlined and excised language indicated by a strikethrough):

SECTION 4. Forum for Adjudication of Disputes.

A. ~~With respect to any action arising out of any act or omission occurring after the adoption of this By-Law,~~ Unless the Corporation consents in writing to the selection of an alternative forum, to the fullest extent permitted by law, the Court of Chancery of the State of Delaware <u>(or, if the Court of Chancery does not have jurisdiction, another state court located within the State of Delaware or, if no state court located within the State of Delaware has jurisdiction, the federal district court for the District of Delaware or the federal district court for the Eastern District of Virginia[5])</u> shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any <u>current or former</u> director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim arising pursuant to any provision of the Delaware General Corporation Law, the Certificate of Incorporation or these By-Laws, or (iv) any action asserting a claim governed by the internal affairs doctrine, in each case subject to the Court of Chancery of the State of Delaware having personal jurisdiction over the indispensable parties named as defendants therein.

<u>B. To the fullest extent permitted by law, any person or entity purchasing or otherwise acquiring, holding or having held any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Section 4.</u>

*Id.* at Exhibit A (emphasis added). Notably, this significant change to Boeing's Forum Bylaw to conform with federal and Delaware law confirms –without a doubt—Boeing's stockholders' ability to now assert federal derivative claims against the Company's directors and officers on claims with exclusive federal jurisdiction. Consequently, this reform enhances Boeing's corporate governance and shareholders' rights in the future by providing an important check on Boeing's directors' and officers' power through the shareholders' ability to bring a derivative action.

---

[5] The Eastern District of Virginia is where Boeing's headquarters are now located.

**Release:** In exchange for the consideration described above, the Federal Settlement provides that Plaintiff will provide a release of all claims arising from facts alleged in this derivative action (and the Delaware Action).[6]

## IV. ARGUMENT

### A. The Standards Governing Preliminary Approval

In the Seventh Circuit, settlements are strongly encouraged as a matter of sound public policy. *See In re Pub. Servs. Co. of Ind. Derivative Litig.*, 125 F.R.D. 484, 495 (S.D. Ind. 1988) (internal citations omitted). Pursuant to Federal Rule of Civil Procedure Rule 23.1(c), "[a] derivative action may be settled . . . only with the court's approval." In considering whether to approve a derivative action settlement, courts typically follow a two-step process: (1) preliminary approval; and (2) notice followed by a fairness hearing. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010); *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) (internal citation and footnote omitted). If the Court grants preliminary approval, it will direct the parties to disseminate notice of the Proposed Settlement and the Settlement Hearing to other Company stockholders, which will occur after the Delaware court has also entered an initial order. *Id.* At the Settlement Hearing, the Court will then consider and make a final determination as to whether the Proposed Settlement is "fair, adequate, and reasonable, and not a product of collusion." *In re AT&T Mobility*, 270 F.R.D. at 345; quoting *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002) (quotation omitted).

---

[6] The Federal Settlement does not release any direct claims or other non-derivative claims on behalf of non-party stockholders against Boeing or any third parties arising in any way from the 737 MAX Accidents and the Grounding, including the direct claims being prosecuted in the related action before captioned *In re The Boeing Co. Aircraft Securities Litig.*, No. 19 Civ. 2394 (N.D. Ill.), and *Burke* v. *The Boeing Co., et al.*, No. 1:19-cv-02203 (N.D. Ill.).

8

The preliminary approval stage requires the Court to determine whether the Proposed Settlement is "within the range of possible approval." *See In re AT&T Mobility*, 270 F.R.D. at 346; *Armstrong,* 616 F.2d at 314.[7] In deciding whether to preliminarily approve a settlement, a court must consider: (1) the strength of plaintiff['s] case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *In re AT&T Mobility*, 270 F.R.D. at 346 (quoting *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996); *Armstrong,* 616 F.2d at 314; *Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.,* Nos. 05 C 5944 & 07 C 2439, 2007 WL 4105204, at *5 (N.D. Ill. Nov.14, 2007) ("Although [the 'fair, reasonable, and adequate'] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase.").

Moreover, courts "'do not focus on individual components of the settlement [ ], but rather view them in their entirety in evaluating their fairness.'" *Isby,* 75 F.3d at 1199. In addition, when analyzing whether a proposed settlement is fair, reasonable, and adequate, courts "should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *E.E.O.C. v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir.1985). A court "must not forget that it is reviewing a settlement proposal rather than ordering a remedy in a litigated case," *Armstrong,* 616 F.2d at 314–15, keeping in mind that the presence of more creative or

---

[7] In approving derivative settlements, courts view as instructive case law governing preliminary approval of class action settlements pursuant to Fed. R. Civ. Proc. 23(e). *See City of Plantation Police Officers' Employees' Retirement System v. Jefferies*, 2014 WL 7404000 at *5 (D.D. Ohio Dec. 30, 2014).

9

traditional alternatives does not preclude settlement approval. *See Uhl v. Thoroughbred Tech. and Telecomm., Inc.,* 309 F.3d 978, 987 (7th Cir. 2002).

The Federal Settlement here meets this standard and should, accordingly, be preliminarily approved.

### 1. The Proposed Settlement is Reasonable in Light of the Risks and Costs in Further Litigation

"An integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of* Fitzsimmons, 778 F.2d 298, 309 (7th Cir. 1985). Though Plaintiff is highly confident in the merits of its claims, derivative litigation is "notoriously difficult and unpredictable," *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992), and litigating the Federal Action through trial and possible appeals is not a risk-free proposition. Here, although the court does not need to address the merits Plaintiff's claims, there are significant risks and costs if this derivative action does not settle.

For example, Plaintiff expected to face challenges from Defendants on demand futility grounds, including whether Boeing's "102(b)(7) provision" prevents Plaintiff from asserting derivative Section 14(a) claims based on a negligence pleading standard. Plaintiff also faced risks that the Court would accept Defendants' claims that Plaintiff failed to allege elements of derivative Section 14(a) claims related to re-electing directors. The lack of clear controlling precedent on both issues by the Seventh Circuit creates additional risks and could have resulted in prolonged litigation and appeals all of which militates in favor of approving the proposed Federal Settlement. *See Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom., Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) (approving

settlement "[g]iven the unsettled nature of the law with respect to certain claims").[8] Additionally, Defendants could be expected to strenuously challenge Plaintiff's damages theories.

Assuming this case survived Defendants' motion to dismiss, and any appeals therefrom, fact and expert discovery followed by summary judgment briefing and trial would be extremely costly – potentially millions of dollars in attorneys' and expert fees.

Given the risks and costs of continued litigation, the proposed Federal Settlement represents an excellent result, which includes both a monetary recovery and importantly a key governance reform tailored to ensure Boeing's stockholders' right to bring derivative actions where federal courts possess exclusive jurisdiction. Here, the $6.25 million monetary component also represents an excellent result given the difficulties of proving liability and damages.[9] Plaintiff further believes that the reform of Boeing's Forum Bylaw is even more valuable to Boeing and its stockholders than the monetary component as it will provide significant important benefits going forward. *Cf. Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir. 1983) (recognizing that the "effects of [a derivative] suit on the functioning of the corporation may have a substantially greater economic impact on it, both long-and short-term, than the dollar amount of any likely judgment"); *see also In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 342 (S.D.N.Y. 2011) (recognizing the reforms will "provide considerable corporate benefits … in the form of a significantly improved institutional

---

[8] There also is the risk of the Board appointing a Special Litigation Committee, which could move to dismiss Plaintiff's claims, which Plaintiff would then have to challenge. The Delaware Action posed additional risks, including the possibility of a decision conflicting with the Seventh Circuit's ruling regarding the Forum Bylaw under Delaware law.
[9] Of note, Boeing's 2020's proxy statement was filed after Seafarers filed its Federal Complaint and included disclosures describing, among other things, (1) the Accidents involving Lion Air Flight 610 and Ethiopian Airlines Flight 302 and the steps taken by Boeing's Board of Directors following the Accidents to strengthen and affirm Boeing's commitment to safety and Boeing's outreach to the families of those impacted by the 737 MAX Accidents, (2) Boeing's work with the FAA and other regulators to return the 737 MAX to service, (3) changes to executive compensation that occurred "[s]ince the grounding of the 737 MAX" fleet, and (4) Boeing's recognition of liabilities "related to customer concessions and other considerations." These disclosures were consistent with Plaintiff's goals in filing the Federal Action, along with the relief sought: providing Boeing stockholders with the information needed regarding the 737 MAX for an informed vote on Director elections and other matters.

structure for detecting and rectifying the types of wrongdoing that have … caused extensive harm to the company").[10]

Further, the new Forum Bylaw constitutes "a form of relief that [Seafarers] could not have obtained at trial" and that was, therefore, only achievable through a negotiated resolution of this action. *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1067 (Del. Ch. 2015) (commenting favorably on non-monetary aspects of a shareholder derivative settlement).

### 2. Continuing the Federal Action Will Be Complex, Time-Consuming, and Expensive

As discussed, it would be expensive and time consuming for Plaintiff to continue to pursue this derivative action against Defendants. For example, it might involve drafting an amended complaint, briefing on the right to amend, and regardless of both, briefing at least one substantive motion to dismiss, with the possibility of other appeals to the Seventh Circuit on multiple issues. Moreover, discovery would be costly and would likely include motion practice. There also would be a battle of the experts about novel issues related to Section 14(a) damages and the re-election of directors, before going to trial which would not be for years. The proposed Federal Settlement, therefore, will result in considerable savings of money and time.

### 3. It is Too Early to Evaluate Objections to the Proposed Settlement

Notice has not yet been provided to Boeing's stockholders, so it is too early to evaluate any affected parties' opposition to the settlement. *See In re AT&T Mobility*, 270 F.R.D. at 346. If any objections are filed regarding this settlement, the Court will have an opportunity to consider such objections during the Federal Settlement Hearing.

---

[10] *See also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970) (recognizing that "a corporation may receive a 'substantial benefit' from a derivative suit … regardless of whether the benefit is pecuniary in nature"); *AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302, 2006 WL 2572114, at *4 (S.D.N.Y. Sept. 6, 2006) (non-monetary benefits alone can be "substantial enough to merit [settlement] approval").

### 4. Plaintiff's Counsel is Experienced in Derivative Litigation and Believes the Proposed Settlement of the Federal Action is Fair and Reasonable

The opinion of competent counsel is relevant in the Court's evaluation of whether a settlement is fair, reasonable, and adequate under Rule 23. *Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 586 (N.D. Ill. 2011) (finding the opinion of competent counsel supports approval of the settlement). Plaintiff's counsel has extensive and successful experience over many decades in litigating securities class actions and derivative actions and is fully familiar with the factual and legal issues in the case and the risks associated with continued litigation. Based on this experience, and as will be addressed more fully in the Declaration in support of final approval, Plaintiff's counsel believes the combination of monetary relief and the significant corporate bylaw amendment is an excellent result in a highly complex case involving difficult and novel legal issues.

### 5. The Stage of the Proceedings Supports Approval of the Settlement

The stage of the proceedings and the amount of discovery completed at the time of settlement is important in evaluating preliminary approval because it "indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong* 616 F.2d at 325. This factor clearly supports approval here. In this regard, Plaintiff conducted a comprehensive investigation involving both public and non-public information before filing the Federal Action. Those documents consisted of Boeing's Board and its Committees' meeting minutes, and presentations, and emails between Boeing's CEO and the rest of the Board, which provided critical information to assist Plaintiff with evaluating the merits of its claims. Moreover, Plaintiff's investigation went significantly beyond the 220 production and included, among other things, the review of the Company's filings, the Defendants' public statements, media reports and the transcripts of Congressional hearing testimony, including exhibits, and discussions with people familiar with aviation and FAA requirements. Moreover, all parties participated in months of settlement negotiations, which included

13

a full-day meditation with an independent mediator, and Plaintiff's counsel's consultations with experts. Ample opportunity, therefore, has existed to evaluate Plaintiff's claims.

### B. Attorneys' Fees and Expenses

Plaintiff's counsel conducted extensive work in the Actions on a fully contingent basis and achieved a settlement in the Federal Action providing a Monetary Component and, in settlement of both the Federal Action and Delaware Action, obtained a significant governance reform that permits derivative claims based on exclusive federal jurisdiction to be brought. Of note, there are at least eight federal statutory schemes that exist containing exclusive federal jurisdiction.

As set forth in the proposed Notice, Plaintiff's counsel intends to petition the Federal Court for a fee and expense award in an amount no greater than $4.25 million in light of the benefits provided to Boeing and Boeing's stockholders associated with the Settlements and in connection with Counsel's work on the Actions. Of note, Plaintiff's counsel will not seek a multiple on its time spent on the Actions, and in fact, any amount sought for fees and costs will be a discount off its actual lodestar in the Actions. Further, Plaintiff and Plaintiff's counsel intend to petition the Court for a service award of up to $15,000 for Plaintiff in recognition of its participation and efforts in prosecuting the books and records demands, related Section 220 investigation and the Actions.

Plaintiff's Counsel will submit additional detailed information in support of its requested fee and expense award, and the service award in connection with Plaintiff's motion for final approval of the proposed Federal Settlement and the Court will have the opportunity to fully address the reasonableness of the request.

### C. The Proposed Notice is Adequate and Reasonable

As detailed in the Preliminary Approval Order, if the Court grants preliminary approval and the Delaware Court enters a Scheduling Order, Boeing will notify current Boeing stockholders and Delaware Settlement Class members as follows: (a) except for Boeing stockholders and Delaware

14

Settlement Class members who are current record holders of Boeing stock and who have elected to receive information from Boeing electronically and to whom Boeing shall send electronically a copy of the Notice, Ex. G, Stipulation ¶67, Boeing shall mail, or cause to be mailed, by first class U.S. mail, or other mail service if mailed outside the U.S., a copy of the Notice, to all Boeing stockholders and Delaware Settlement Class members who are or were record holders of Boeing stock at their last known address appearing in the stock transfer records maintained by or on behalf of Boeing, and all such record holders of Boeing stock shall be directed to forward such Notice promptly to the beneficial owners of those securities; and (b) Boeing shall publish the Summary Notice, Ex. H, Stipulation ¶67, as a quarter-page advertisement in the national edition of the *Wall Street Journal* and over the *PR Newswire.*

The proposed Notice will advise the Company's stockholders of the essential terms of the Federal Settlement, the Background on the Action and Reasons for the Settlement, Plaintiff counsel's intended application for a fee and expense award and for a service award for Plaintiff, the right to appear, the procedure for any objections and the specifics on the date, time and place of the Federal Settlement Hearing before this Court, thereby satisfying the requirements of Rule 23.1 and due process. The Notice contains the same type of information for the Delaware Settlement.

Further, Boeing's counsel will file an affidavit or declaration regarding the mailing and publication of notice at least fourteen days before the Federal Settlement Hearing.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant preliminary approval of the Proposed Settlement, approve the form and manner of the parties' proposed notice approve and direct the implementation of the notice plan, and schedule a Federal Settlement Hearing.

Dated: August 10, 2022            Respectfully submitted,

*/s/ Carol V. Gilden*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Carol V. Gilden
190 S. LaSalle Street, Suite 1705
Chicago, Illinois 60603
IL Bar No.: 6185530
Telephone: (312) 629-3737
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

Steven J. Toll
1100 New York Ave. NW, Fifth Floor
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com

- and -

Richard A. Speirs
Amy Miller
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838 7745
rspeirs@cohenmilstein.com
amiller@cohenmilstein.com

*Counsel for Plaintiff Seafarers Pension Plan*